We have returned in the matter of Kathleen Sonner v. Premier Nutrition, Case No. 18-15890. Each slide has 15 minutes. Good morning. Good morning, Your Honors. Leslie Hurst, Counsel for Appellant Kathleen Sonner. I'd like to reserve about five minutes for rebuttal. The question before the Court this morning is whether the California Legislature, in the Unfair Competition Law and Consumer Legal Remedies Act, intended that the equitable remedies that these statutes specifically provide are available regardless of and in addition to legal remedies. I thought the question, the seminal question in this case, was an eerie question, whether the eerie doctrine applies. That is a question. I think that the eerie doctrine does apply, and under eerie, when a state law provides substantive relief, state law also provides the law on the remedies, including equitable remedies. Let me ask you this, though. Did you file directly in federal court under CAFA, or was it removed? We filed, I believe, directly in federal court under CAFA because the CAFA circumstances were met, and we didn't see any need to file in state court and then be facing a removal without a remand. Okay. So we were in federal court. I thought that's what it appeared to be to me, but I just wanted to clarify that because So go back to Judge Lucero. We think under eerie, clearly, California law applies, and California law on remedies applies. But what about Justice Frankfurter's statement in Guaranteed Trust v. York, which has not been repudiated in over 70 years and has been adopted by multiple circuits, that even when state court supplies an equitable remedy or a right to a remedy, if federal court does not, the federal court cannot grant that remedy? Those statements in eerie have been regarded by legal scholars as unfortunate dicta that do not change the ultimate holding in Guaranteed Trust, which affirms eerie, which is, and should be substantially the same in federal court, and this is where the quote starts, so long as legal rules determine the outcome, as it would be as if tried in state court. So you don't get a different result just because you're in federal court than you would in state court down the street. And that's what Guaranteed Trust says eerie stands for. Well, Guaranteed Trust says both. I'll go with you that there's tension in that language. But nonetheless, the 2nd, 5th, 8th, 10th, and 11th circuits have held that state law does not circumscribe a federal court's equitable powers when state law supplies a rule of decision. So you're suggesting commentators versus multiple circuits. But the 9th circuit in Sims v. Kelly and the 9th circuit in McKesson applied California law when the remedied issue was injunctive relief. It applied. You have in California, you have Compare Canadian Life decided in 2009, and you have Sims, as you cite to it, in 1988. And McKesson in 2003. Their intention, and they're in conflict, those two cases. Which one under the 9th circuit authority prevails, the 1988 case or 2009? What is the 2009 case you're referring to? Compare Canadian Life Assurance Company v. LaPeter. Well, Canadian Life. No, you look at the Canadian Life case, and I think, and there's another one that is a similar thing. In those cases, the court really said, we don't get to Erie, because there it was whether, oh my, it was, I've got that. That is, I mean. But the court. Yes, that is where, whether there should be an appointment of receiver. And here, the 9th circuit said, that doesn't directly affect the outcome of the case. Ancillary or incidental remedy. So you don't get to Erie. You don't get to Erie, because they're not really like this. You know, state law isn't going to affect the outcome of the case. The quote from the case, counsel, is that statute does not change the nature of the federal court's equitable powers. So even though they're talking about receivership in that case, it seems that that 9th circuit case law may be mixed, that would be a valid point for you to assert. But we nonetheless have a pretty substantial body of law that applies the doctrine that you need to show there's an inadequate remedy of law to allow equitable remedies. And that's a requirement in federal court. Even when we're sitting in diversity, and even when the state court, state law provides something else. I would disagree with you on the second point. Because, where was I going? Well, you need to slow your roll. Listen to the question, and then, because we've got a lot to talk about here. And not talk over us, please. I'm sorry, Your Honor. I don't think that federal law is that we have to show an inadequate remedy of law. Federal law is under U.S. Supreme Court precedent, and this court's precedent, and most recently, the 2019 case that we submitted with our first Rule 28J submission. The rule there is that the legislature, whether it's Congress or the California legislature, can enact a law providing equitable remedies where an inadequate remedy of law is not provided, is not required. And so, under federal law, what you do is you look to the intent of the legislature, when it's the state law, intent of the Congress, when it's the federal law, and so you really come to the same result. Well, if it were not an eerie, but if it weren't an eerie issue, I agree with you completely on how you decide what the substantive law is. But on the eerie issue, it seems to be separate and apart from that analysis to the extent. And the troubling language, I mean, you know, I'm going to say, you know, I'm really, I'm listening to all of that, what you call the unfortunate dicta, that it does seem to say that you can't, that the federal equitable powers are not circumscribed by what the state statute would say. So, I'm trying to get, I'll put all of that together as far as that goes. And you're saying, well, we have to look to, it should be the same result in federal court as in state court. But you're using that in a way that, you know, I'm just trying to sort of practically look at this as a sword and a shield, because procedurally what you did here was at the midnight hour, as it were, that after you prevailed on summary judgment and for whatever reason decided, well, I think a court trial would be a great idea now. You made a strategic decision to have a court trial, get rid of the damages. But, and just go for equitable relief of restitution, but interestingly, the amount you're requesting in restitution is exactly the same as you were requesting in damages, and it would be easier to show the restitution. So, it seems very important that that was advantageous to you, and you made that determination. They're obviously squawking over, they wanted a jury trial, and they would want a jury to decide that. So, it is really crucial whether if the federal equitable powers, if it requires that you have no other remedy available, then you're out. No, I think you're incorrect on that point, and it's probably my inability to articulate the Erie Doctrine. We first said we don't think Erie applies. Even if it does, even if federal law applies. Well, Erie always applies in federal court. If federal law applies, if federal law applies under Erie. Yeah, you chose to be here. Yeah, okay, federal law applies under Erie. Under federal law, to determine whether an equitable remedy is required, under a statute, you look to the legislature's intent in enacting that statute. Under federal law. Under state law, too, we say, but under federal law. So, let's apply federal law. Under federal law, to determine whether an inadequate remedy at law is required, you look to the intent of the statute. You look to its text, you look to its purpose, and you look to its history. So, under federal law, the job of this court is to look to the UCL and CLRA. You look at the language, you look at the intent, and you look at the history of those statutes to determine whether the legislature, in enacting those laws, wanted them to provide for equitable remedies with or without an inadequate remedy at law. Thank you. Counsel, if I may interrupt for one second, because I think Judge Beatty asked you, the guaranteed trust be York. You said it does apply. I would say under guaranteed trust be York. Yes. Applying that court's application and articulation of the Erie Doctrine, you apply California law. Well, wait a second. Not so quick. In guaranteed trust, the court said that in order to do the analysis, you ask whether a plain, adequate, and complete remedy at law be wanting. In other words, okay, so you said, well, there may be a remedy at law, but we waive it because we want a jury trial. So it seems to me that in doing that, you precisely stepped into guaranteed trust be York because the only reason that the remedy at law is wanting is because you elected to not avail yourself of it. So you availed. You said, okay, I'm going to go into federal court. Excuse me, I'm going to go to the bench trial, and we're not going to pursue the alternative remedy. Am I wrong about that? You're not wrong about what we did, but the statutes allow you. Forget the statutes. We're still under Erie, and we're still under guaranteed trust. I don't think that damages can be seen. Going to a bench trial provides remedies that legal damages do not in a jury trial. The bench trial lets you seek restitution, which is subject to different standards of proof than damages. Well, it gives you legal advantage, but not necessarily. You're seeking $32 million either way, but at different standards. There are different standards of proof and evidence under restitution as opposed to legal damages. Yes. The cases directly on point are Coogan and the one we submitted, Krueger, with our second 28-J letter. I guess we're oversimplifying in the sense if you had left the damages in and you went to a jury trial, then we wouldn't have to do this Erie analysis, and then we would just be looking. Well, we would be doing it, but we wouldn't be deciding are you trying to expand federal equitable remedies. We would be looking at it as to what is California law. What's the UCL and what's the CRLA, and we would have to. We don't have a California Supreme Court case, but we would look to what the courts of appeal do, which people here sometimes keep. I was on the court of appeal, and people want to call it the courts of appeal or the court of appeals, but now I'm on the court of appeals. But anyway, so we would have to look to what the law is. And the judge could have certified it, chose not to, but said I know what the law is, and the district court said I don't think that California law, you're not getting it right. The judge said you didn't have it right under California law, right? Yes. The judge didn't really make the Erie analysis that we're talking about right now, right? That's correct. So we've got two levels of Erie going on right now. Yes. So if we were back, if you had gone forward in a jury trial, we would be making the analysis of whether the district court predicted, did the right, read the tea leaves right about California law. But we still have to do this other level before. That's what's causing me heartburn. And I still think that under that analysis, even if you say we have to apply federal law, under federal law, and that is, well, it's under the winter case. It's under the cannabis case. You look to the statute. Wait, wait. I think you're mixing apples and oranges here. So I agree with you that if we were there, if we determined that the federal court had the power to issue the remedy that you seek, we would then be looking to the statutes at issue, the California statutes, to determine what California would require. There's, of course, the related issue of would it be appropriate for the federal court to certify that question if there's significant uncertainty about what the California courts would do. But before we even get there, before we even look at the statutes, we have to deal with the doctrine that, just to quote it from Guaranteed Trust, state law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal. So before we even start analyzing your state laws to decide what California intended, we have to look at the federal jurisdictional issue of whether that remedy is available in the federal court, not whether California would allow it, whether it's available in the federal court. Now, I frankly disagree, because if you did it that way, you would be changing the intent of the legislature. But the intent of the legislature does not trump federal jurisdiction. California legislation cannot trump the powers of the federal court and what it can and cannot do. Those are separate matters. And so you may disagree with me or disagreeing with Justice Frankfurter's comment over 70 years ago that has been adopted and followed by multiple circuits. And I know there's tension between the outcome determinative test under Erie and this issue with federal court power. And most of the courts, quite frankly, are coming down on the side that I'm articulating to you. So you're arguing to us what the California legislature intended. We're not even there. We don't even get there until we get past this jurisdictional issue. And I think I do disagree on that, but on the jurisdictional issue, I think that under this court's cases in the Sims case and the other case, which the name I'll get, under jury and under guarantee trust, you would apply state law on the equitable remedies. And so that is getting past the jurisdictional issue and getting to the statutes and the intent and purpose of the statutes according to California law. So is there any way? So I've noted for you the second, fifth, eighth, tenth, and eleventh circuits follow the language in guarantee trust. You're relying on Sims-Snowboard in the Ninth Circuit case. That is not directly on point. And the second, third, and fourth circuits have taken the argument you're suggesting. The D.C. Circuit and the Seventh Circuit have recognized the split in authority but haven't ruled on it, have ruled on other grounds. Is there any basis that we could avoid this issue? Is there some way that we could rule on other grounds? I would like on rebuttal. I've got other cases where applying the guarantee trust is an eerie issue, and so I'd like to bring those to your attention on rebuttal if I may. Unfortunately, you don't get to sit down when you have a hard question. But that being said, with Judge Beatty's leave on this, if I will. . . That's fine with me. If you'd like to take a few minutes to look. . . You're in overtime, but I will give you some time on rebuttal. Okay. Thank you. Good morning, Your Honors. My name is Jessica Grant, and I represent Premier Nutrition in this case. Counsel, before you breathe too easily, I do have a question for you. Sure. And that is that the Sims case, which seems to have given out to opposing counsel, was decided in 1988. It seems to me, contrary to what she argues, that Compare Canadian Life, decided in 2009, is to the contrary. Given the seeming inconsistency between those cases, don't we follow in this circuit the earlier case, the 1988? Doesn't it trump the later inconsistent case? Or what is the status of the law in the ninth? Thank you, Your Honor. I believe that the guarantee trust case, and I think counsel said that there was dicta there. It's actually not dicta. The Supreme Court held very clearly that equitable relief in a federal court is, of course, subject to restrictions. The suit must be within the traditional scope. We know that language, but I think in fairness, it generally has been referred to as dicta by other cases. But it's irrelevant. It's the Supreme Court dicta in any event. So if the Supreme Court speaks, we listen. And this Court listened in 2009 in Canada Life Assurance Code. Right, but 1988 was an earlier decision. And I'm a little more familiar with Tenth Circuit authority, and the general rule is that the earlier case in the federal systems throughout, that the earlier case controls. I think the Sims is actually an opposite, and basically all that court really held was that federal courts in similar cases have come to contradictory conclusions. In 2009, this court specifically held relying on guarantee trust that And ignoring Sims. Because it was not on point, holding that a federal court sitting in diversity may exercise equitable powers independent of state law. And so I think what's going on here, and I think we cannot lose sight of the fact that traditional principles of And here the court did not exercise his equitable discretion because the plaintiffs had an admittedly adequate remedy at law under the CLRA to compensate them, their $32 million, that they had pursued for four years. And when they recognized that unlike a lot of defendants, this defendant, we were ready to try this case. We were going to try the case. Well, we're actually making a better argument for you right now than you made for yourself. All right, the district judge didn't really, was not as hung up on this as we are right now. And you really, I think, only kind of gave it a throwaway in your brief. So... I think there's two ways of coming to the same place. One is the way we've already been talking about today, which is guarantee trust. And the other way is if you actually do look at the text of the UCL, which of course does not abrogate any fundamental equitable principles, it actually says that it's merely codifying the equitable principles and powers that are already inherent in the court. Well, you kind of have a problem with me as a California girl here in terms of being pretty familiar with the California courts and the California Supreme Court and having certified issues. I'm not, I think the appellant may have the better argument of what the California Supreme Court is going to say. I'm not sure the district court was right on that. But that doesn't matter if it's resolved at the first level. The attorney general does not support your position. The top cop in California basically says, hey, they got it right, right? Well, with all due respect, I think what's being lost by Amiki and the plaintiff here is that there is an adequate remedy at law. We all know, and I think in the consumer advocate's case, the court said that because the plaintiff had an adequate remedy at law under the Song-Beverly Act, a court had no business. A court in equity, it was not proper for the court to act. So, of course, the courts in equity, we never get there if there's an adequate remedy at law. Meaning, by definition, the remedy for compensatory damages, the $32 million, is adequate under the law. So you don't get to equity. And what the plaintiffs have done here, they've cited not a single case anywhere in the country where a plaintiff has an admittedly adequate remedy at law for compensatory damages for their past harm, and they have been allowed to get equitable restitution for that exact same past harm. There's not a single case anywhere in the country that they have cited, and we're not aware of any such authority. But to your point, Your Honor, I'm a California girl too. In the Supreme Court in Cortez, I think we do know what the California Supreme Court would do because that case is completely contrary to their argument. The court held that a trial court should consider equitable considerations and that equitable defenses apply to the UCL. So we know that the UCL did not abrogate fundamental equitable principles, of which one of the most fundamental is the inadequacy of law requirement because it is what safeguards a defendant's Seventh Amendment right to a jury trial. To prevent exactly what happened in this case, literally on the 11th hour, when they realized we were going to try the case, they dismissed their adequate remedy at law. We warned them. The court gave very stern warnings about doing so, and they went ahead and did it. Would you be a little more explicit than that? What did you say, and what did the court say? So basically, what we said on the motion to amend is I actually made some of the same arguments that I made later on in the motion to dismiss hearing, citing the decisions from, I think it was, 11 district courts, all of which had concluded that where there is an adequate remedy at law, you're not entitled to equitable relief. And Judge Seaborg said to plaintiff's counsel, if Ms. Grant, that's me, if Ms. Grant is right on the law, I might dismiss your claims for equitable restitution. So be very careful and think about whether you want to do this. And we literally left the hearing, Your Honors, and I think it was within an hour they went ahead and filed their amended complaint, dropping their CLRA damage claim. Does that have any reference to whether it was done with prejudice or without? Well, so then we had another hearing on the motion to dismiss where they tried to resurrect their previously dismissed CLRA claim, and the court gave three different reasons why he did not believe leave to amend was appropriate. The first was fundamental fairness. We had litigated this case for four years, so there was the fairness of doing this, I think he called it a stratagem at the 11th hour. The second was the prejudice to the court, and the third was the prejudice to Premier. We were ready to try this case. We were ready to defend our product. And they balked at the 11th hour, thought they'd get a more favorable result from the judge. Well, except for you were ready to defend the $32 million, so it didn't really, you could have still been ready. We were ready. It wasn't really, it was $32 million either way, and that seems to be exactly the same thing. Right. We have a constitutional right to a jury trial. They tried to unilaterally circumvent that right because they thought they would get a better result from Judge Seaborg because he denied our motion for summary judgment. But the problem is they have an adequate remedy. I mean, we can't lose sight of the adjective adequate because by definition the remedy under the CLRA, which is we have a constitutional right to a jury trial in equity, right? No, of course not. We had a constitutional right to a jury trial under the CLRA claim. Right. But your argument, and I think it's well taken when you're arguing there was an adequate remedy at law, but that assumes that it wasn't abrogated by the California legislation and even assumes before that that we're now at the point where we believe the federal court would have the power to provide that remedy and we're now going to look at state law. So there's so many steps we have to get to before we go to what you're arguing. But you argued that, if we're going to look at the state law issue, that the California legislature knows how to abrogate equitable principles. They did it in 15 other statutes, and they explicitly abrogated the requirement of an inadequate remedy at law before you'd have equitable relief. And then you also argued that if Soner's argument were correct, that it would have breathtaking results. It would be unprecedented. Have you seen those breathtaking results with respect to the 15 other statutes that abrogated that equitable doctrine? To be honest, Your Honor, I have not analyzed those statutes, but I think what's unique here is that normally you don't see plaintiffs dismissing their money damages claims to proceed in equity. That's what's sort of unusual about this case. But the point of your argument is that this would be upsetting the apple cart. It would be breathtaking. It would be outlandish. It would be shocking. But your other argument that California's done it 15 other times, at least that you know of and cite to us, sort of undercuts that. I mean, what is going to be so radical about this if their interpretation of California law is correct? Sure. I think because what you could have is any plaintiff, by simply styling their claim for equitable restitution, could then strip a defendant of the constitutional right to a jury trial when they have an adequate remedy at law. That would be breathtaking. That would be a radical departure from fundamental equitable jurisprudence and Seventh Amendment jurisprudence that's over 100 years old. But I also think you don't even have to get to that. But there's some amici you could have gotten. Well, we didn't go out shopping for amici, and I don't think there's any reason for any. The law is so clear. When you look at the legislative history— Well, the top cop of the state doesn't think it's as clear as you do. Well, with all due respect, I think that he's misinterpreting the law. When you look at the text of the statute, it does not abrogate fundamental equitable principles. When you look at the legislative history, it says that the UCL is not creating any new rights, and it is merely codifying the power already inherent in the court's equity power. But I agree with Your Honors. You actually don't even have to get there, because step one, when you look at guarantee trust and this court's decision in 2009 in Canada Life Assurance Co., it's very clear that a federal court sitting in diversity is bound by fundamental principles of equity. And as we know, whether it was in the Gwinnett case, one of the most fundamental principles of equity, and it was expressed, I think, over in 1891 in Scott v. Neely, this court in Mort v. United States, one of the most fundamental aspects is that you are not entitled to equity when you have an adequate remedy at law. And so to depart from that, where the plaintiff here has an admittedly adequate remedy at law, not citing a single case where a court has allowed a plaintiff to seek equitable restitution when she has an adequate remedy for compensatory damages at law, it would be a radical departure from Seventh Amendment and equitable jurisdiction. If we follow Sims, do you win or lose? I think we would still win, because I think that the lower court appropriately decided not to exercise its discretion in equity. Again, there's no automatic right to equity, and that's sort of what the plaintiff and the amici are suggesting, is that you just have this automatic right to equity. No, you don't. When there's an adequate remedy at law, equity does not step in. It's only a stopgap measure. But even if you were to find, to your question, then I think you get to the state statute analysis. The UCL does not abrogate fundamental equitable principles. How do we know that? The Cortez decision by the California Supreme Court also. But what about the language in the statute that says it's cumulative, the remedies are cumulative, and it's in addition to all other remedies allowed by law? Right. So cumulative does not mean an abrogation. Cumulative is just it's supplemental to other remedies. This issue is expressly decided in the Salas case by the Central District, and other courts as well. I think it was also in the Farmer's case, or in the California Supreme Court, where the plaintiffs had argued in those cases that because the remedies are cumulative, somehow that means that there's been some abrogation of the equitable principles. And the Supreme Court in Farmer's and the Salas case also said no. If you look at the legislative history, there's not a single mention of even a consideration that fundamental equitable principles would be abrogated or the inadequate remedy at law would be abrogated. Do you agree that California could choose to do that? They could if they didn't explicitly abrogate those principles. Yes, and I think it would, as the Woods Court made clear. Then why would that create the Seventh Amendment problems that you're addressing? You're suggesting that it couldn't be the case here because it would violate your right to a jury trial, but they could do it with other statutes? I think the difference is if the legislature makes a decision that it wants to abrogate fundamental equitable principles like the inadequacy, it has done so expressly. It has not done so by silence or implication, which is essentially what the plaintiffs and the amici are arguing. Every time the legislature has abrogated the inadequate remedy at law requirement, it has done so expressly. It did not do so here in the UCL or the CLRA. And, in fact, when you look at the legislative history, there's no mention of even a consideration of that. Instead, the legislative history makes clear that they were not creating any new remedies, and they were merely codifying the equitable power already inherent in the court. I need to understand how this would have played out. Okay, so you lost its summary judgment and had appellant plaintiffs not made the move to get rid of the money damages. So you were prepared to go to trial on both the UCL and the CLRA, right? We were prepared to do the jury trial on the CLRA, and then they had injunctive relief and restitution. But I think we would have done a bench trial on injunctive relief, and the court would have issued a statement of decision. That's traditionally when I've tried cases like that on the plaintiff and defense side. So it would have gone to jury first on the CLRA? Yes. And if they prevailed there, would that have been the end of it? That would have been the end of their money damages, and they would have had a forward-looking injunction that we would have tried under the UCL to the bench, which is typically how it is done. All right, what if they lost under the CLRA? What would have happened next? I mean, how would this have reared its head in terms of because then the court would have to decide if they could go ahead under California law? No, and that's where I think what there are... I'm just trying to logistically, what are all the implications of this? I think this is your question, and I apologize if it's not. What they're trying to essentially do is turn the UCL into a second bite at the apple. So we go to our jury trial under our adequate remediate law. I'm going to ask for $32 million, and I got zero. Okay, well, now I'm just going to go into equity under the UCL. I'm going to ask the judge for the $32 million as a second bite at the apple. Absolutely not. That is not how equity works. You get your remedy, the adequate remediate law. You do your jury trial. You get $10 million or zero, whatever the number is. And then you don't get to go around again in equity and say, well, you know what, Your Honor, I'd like the other $22 million. I'd like you to give me that because I wasn't whole. That is not how this works, Your Honors. The only way... But what if, let's just say that the statutory scheme abrogated. Let's say that you would lose on that argument. The California Supreme Court said you can do both and you don't have to. Would they then, if that's what the California Supreme Court said, if this had gone forward, would they then be able to have the second bite at the apple? Well, it wouldn't be a second bite. It would be the first bite because there are situations where a plaintiff doesn't have an adequate remediate law, and they can go for restitution or some unjust enrichment or some other remedy. And so that's essentially the first bite at the apple because they don't have an adequate remediate law and they can only get equitable relief. So that's the first bite at the apple. You only get one bite at the apple. And that first bite at the apple here is under the CLRA, like the first bite at the apple under Consumer Advocates was under the Song-Beverly Act. So where you have an adequate remedy at law, that's your first bite at the apple. If you don't have an adequate remedy at law, then your first bite at the apple would be in equity because then equity would step in because there's no adequate remedy at law. Right, but that would all be contingent on the California Supreme Court saying that there has to be an inadequate remedy at law, right? True, and I think when you look at the Cortez decision, it's already indicated. I mean, their argument is equity does not apply. The fundamental equitable principles does not apply to the UCL. We know that is not true because in Cortez, the Supreme Court said equitable defenses apply. Of course, inadequate remedy would be one of them. And equitable considerations should be taken into account when the court is deciding to exercise its discretion of whether or not to fashion, to apply an equitable remedy. But I don't even think... As a matter of practice here, is that submitted under a special interlocutory verdict? I'm sorry? Under California practice, does a special interlocutory verdict go to the jury asking their advice on the equitable aspect? Oh, I see what you're saying. So basically, it would usually be a special verdict form as opposed to a general verdict form in these types of cases. So you don't want to get two trials, but you could theoretically get... So usually what happens is the judge, whatever findings the jury makes, the judge is bound by those, but then the judge can have a bench trial on, like, for instance, the injunctive relief, and then will issue a statement of decision. That's the way it's been when I've done on the plaintiff side and the defense side, both ways. It usually does that. But again, I agree with Your Honours that you don't even need to get to the analysis of what the California Supreme Court would do when you're looking at guarantee trust and this court's decision in Canada Life. But with respect, Judge Callahan, I must. I ask you, if we get to the point where we have to decide whether CIMS or Canada Life applies, which one governs? I would say Canada Life, which is relying upon guarantee trust. All right. Thank you. Thank you, Your Honours. Thank you for your argument. Okay. Was that how much time she had? That's over time, so I'm going to give you three minutes. Okay. I'll end with the guarantee trust. That's not how the council's wrong. That is not how the UCL and CLRA work. It's not a second bite at the apple. But that's how federal jurisdiction works. No, no, no. I'm talking about how restitution versus damages function under the UCL and CLRA. Look at the Hodge case. The Hodge case is a court of appeal case where the plaintiff went to trial under the Labour Code for unpaid wages, for damages. There was a mistrial. They then came back and said, we're going to dismiss our Labour Code claims. We're going to proceed solely under the UCL for restitution and injunctive relief. And the court of appeal said, that's fine. You can do that for strategic reasons. Strategy is not a dirty word. Is that the California court of appeals? This is the California court of appeals. But that is how it works. And yes, you can go to trial. It's not you get one bite at the apple for legal damages and then see if you have any to get restitution. You do both at the same time. Can I clarify something with you? Yes. It's a distinction between restitution at law and restitution in equity. Would you agree that what your clients were seeking was restitution in equity? Yes, yes. And they are different forms of relief. Legal damages are not necessarily an adequate remedy for restitution. Restitution is easier to prove. You have a different standard of proof with different evidence. You get to have a quicker trial. It is not, just because you can get legal damages in the same amount does not mean it's an adequate remedy at law when you can also get restitution. So normally the way it works is you can go to trial, as we initially planned to, on a UCL claim for damages tried to the jury. The jury can award or not. At the same time, the court will make its own decision under restitution. So would the damages have been on the CRLA or under the UCLA? UCL. UCL does not provide damages. That's what you just said. We could go to trial on damages under UCLA. I'm sorry. So I was confused. Under the CRLA. But a jury determination for damages does not mean you can't also seek restitution. It's a different standard. The Colgan case goes directly to that point where plaintiffs were seeking both CLRA damages and CLRA restitution and UCL restitution. Okay, so we're talking a lot about what would happen to the California law. And you may have gathered from our questions that our first concern is whether we can even go there in federal court. And I asked you, right before your time expired, whether there was a way this court could do what the D.C. Circuit and the Seventh Circuit have done in other circumstances and somehow get past that threshold issue of the guarantee trust language. And I agreed. You could sit down and think about it. If you don't have an answer, fair enough. I think you get past it by applying Sims. Oh, Sims. I think you get past it by applying... But let's look at Sims. Sims snowboards, Ninth Circuit, 1988. And there the court held that state law trumps federal law when the state law prohibits the issuance of equitable relief. So there the court said, quote, the general equitable powers of federal court should not enable a party sitting in diversity to obtain an injunction if state law clearly rejects the availability of that remedy. It seems like a basic federalism concern. If the state law didn't provide for injunctive relief, the federal court can't then provide it, which is sort of the opposite. It's not suggesting that that means that state law can then expand equitable remedies in federal court. It's saying federal court can't expand the equitable remedies available under state law. So I don't think Sims supports you at all. Unless you can explain to me some way that it does. I think I would go back to the general principles of ERI, which are the same principles that is the holding of guaranteed trust. That you should... This court should not apply... This court should apply... Should not apply rules where it's going to then come to a different decision by the mere chance that we're in federal court as opposed to state court down the street. We're in federal court because we're required to be in federal court. Whereas, aside from CAFA, we would be in state court, and frankly, I don't think... We wouldn't be having this discussion, and I think we would then be clearly talking California law where plaintiffs and misdemeanors are in a much stronger... Very, very strong position, we think. So I think that's my answer, is that under guaranteed trust and under ERI, you shouldn't be coming to a different conclusion in this court than if we were in state court down the street. Thank you. Thank you. All right, thank you both for your argument. This matter will be submitted. I would compliment both counsel on their presentation. Yes, thank you. It's always good to have good attorneys when you have a difficult case. Thank you.
judges: Lucero, Callahan, Bade